IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JEFFERY GOLD                                                    PLAINTIFF


         v.                              CIVIL NO. 09-5266


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Jeffery Gold, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying his claims for a period of disability and disability insurance benefits (DIB) and

supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the

Social Security Act (Act).  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on December 27,

2005, alleging an inability to work since January 5, 2005,[1] due to a right knee injury and pain;

and diabetes with uncontrolled neuropathy.  (Tr. 16).  For DIB purposes, Plaintiff maintained

_____

[1]Plaintiff amended his alleged onset date to April 1, 2005, at the administrative hearing.  (Tr.247).

insured status through December 31, 2007. (Tr. 16). An administrative hearing was held on December 12, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 243-281).

By written decision dated June 20, 2008, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.18). Specifically, the ALJ found Plaintiff had the following severe impairments: partial medial and lateral meniscectomies, right knee; and poorly controlled diabetes mellitus due to failure to follow prescribed diet and take medications regularly. (Tr. 18). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> Lift/carry 51 to 100 pounds occasionally;
> Lift/carry 21 to 50 pounds frequently;
> Lift/carry up to 10 pounds continuously;
> Sit eight hours in an eight-hour workday;
> Sit two hours at one time;
> Stand six hours in an eight-hour workday;
> Stand two hours at one time;
> Walk six hours in an eight-hour workday;
> Continuously reach, handle, finger, feel, push/pull, balance, stoop, kneel, crouch and crawl;
> Frequently climb stairs, ramps, ladders and scaffolds and use his feet to operate foot controls;
> Tolerate continuous exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold/heat and vibrations; Tolerate exposure to loud noise.

(Tr. 20). With the help of a vocational expert, the ALJ determined Plaintiff could perform his past relevant work as an assembly production worker. (Tr. 24).

-2-

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 24, 2009 (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7,8).

## II.    Evidence Presented:

At the administrative hearing on December 12, 2007, Plaintiff testified that he was forty-eight years of age and had completed twelve grades of education, by English speaking teachers, in the Marshall Islands. (Tr. 252, 258). Plaintiff testified that he could read and write in English but that he sometimes had difficulty speaking in English. The record reflects Plaintiff has worked as an assembly production worker. (Tr. 71-72, 79-80, 269-270).

Prior to the relevant time period, medical evidence reveals Plaintiff sought treatment for a knee injury that resulted in the need for surgical intervention in February of 2002, and diabetes. (Tr. 111-119, 125, 137, 143-144, 151, 153, 155).

The pertinent medical evidence during the relevant time period reflects the following. On July 29, 2005, Plaintiff was seen at the Community Clinic at St. Francis House with complaints of difficulty breathing and a cough. (Tr. 195). Plaintiff was examined and diagnosed with reactive airway disease. (Tr. 196). Plaintiff was prescribed medication and instructed to return in two weeks.

Community Clinic notes dated August 1, 2005, report Plaintiff was in for his follow-up appointment and that he was breathing better. (Tr. 193). Plaintiff also reported he had a history of diabetes mellitus and that he had been out of his medication for two months. Plaintiff was to return in one month. Clinic notes reveal that Plaintiff was called on August 18, 2005, with his

-3-

blood test results and that the phone number the clinic had been given was not working.  (Tr. 192).

Treatment notes dated September 20, 2005, from Boozman-Hoff Regional Eye Clinic, reported Plaintiff had problems reading small print and seeing at a distance.  (Tr. 175).

On June 15, 2006, Plaintiff underwent a general physical examination performed by Dr. William J. McGowan.  (Tr. 177-185).  Plaintiff reported he had worked until the year before but had stopped due to his right knee pain.  Plaintiff reported persistent pain with activity, sitting or standing.  Plaintiff reported that Joan McDonald, RNP, followed Plaintiff's diabetes and that Plaintiff took Tylenol as needed for pain.  Upon examination, Dr. McGowan noted Plaintiff's cervical spine, lumbar spine and extremities were all within normal limits.  Dr. McGowan found no muscle weakness or atrophy and Plaintiff's gait and coordination were within normal limits.  Upon a limb function evaluation, Dr. McGowan reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; and to walk on heel and toes.  Dr. McGowan opined Plaintiff could squat and arise from a squatting position fifty percent of normal.  Dr. McGowan reviewed x-rays of Plaintiff's right knee and opined that they were consistent with degenerative cartilage of the knee without frank bone-on-bone.[2]  (Tr. 177).

St. Francis House Clinic notes dated November 3, 2005, report Plaintiff did not show up for his scheduled appointment.  (Tr. 188).

---

[2]The Court notes that Dr. McGowan did not complete the diagnosis section of the form and did not sign or date the form.  (Tr. 184).

-4-

Notes dated February 22, 2006, from the Northwest Medical Center, report Plaintiff's cataract surgery was cancelled due to Plaintiff's elevated blood sugar. (Tr. 143, 170-174). Plaintiff reported that he had been out of his medication and had stopped taking it "a long time ago." An appointment was scheduled for Plaintiff on February 22nd which was not kept.

Treatment notes dated February 24, 2006, report Plaintiff had been out of medication for one month and that Plaintiff was able to acquire his medications at St. Francis House. (Tr. 142).

Notes dated May 23, 2006, report Plaintiff was in for a post-operative vision appointment. (Tr. 161). Plaintiff reported his vision was much better and that his eye felt good. Plaintiff reported he could feel the lens when he coughed and blinked. Plaintiff reported he only needed glasses to read.

On July 3, 2006, Dr. Steve Owens, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds; could stand and/or walk at least two hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb, balance, stoop, kneel, crouch and crawl; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 200-207). Dr. Owens made the following additional comments:

> Hi8story (sic) of knee meniscectomy some time ago, with current complaints of pain. Exam indicates a normal ROM and gait. X-rays show near bone-on-bone OA changes.

(Tr. 207). After reviewing all the evidence, Dr. Bill F. Payne affirmed Dr. Owens' findings on November 28, 2006. (Tr. 210).

-5-

Treatment notes dated October 27, 2006, report Plaintiff had the following chronic conditions: diabetes II, uncontrolled; hyperlipidemia; and hypertension. (Tr. 228). Dr. Joseph O'Connell noted Plaintiff was taking his medication regularly but was not doing accuchecks. A review of systems indicated that Plaintiff denied fatigue, changes in vision, headaches, and back and joint pain. Upon examination, Dr. O'Connell noted Plaintiff's extremities appeared normal without edema or cyanosis. Plaintiff was prescribed medication and instructed to follow up in two weeks.

Treatment notes dated December 8, 2006, report Plaintiff was seen for a follow-up for his neuropathy. (Tr. 234). Dr. Phuong Mueller noted Plaintiff also had a new complaint of painful heels. Dr. Mueller noted Plaintiff's pedal pulses were palpable bilaterally and that Plaintiff had mildly decreased sensation in the plantar of both feet. There was no sign of infection or open sores in Plaintiff's feet or ankles. Plaintiff was diagnosed with plantar fascitis, pain in limb and diabetes mellitus.

Treatment notes dated January 5, 2007, report Dr. O'Connell noted Plaintiff was not following the prescribed diet, taking medication regularly, or doing accuchecks. (Tr. 226). Dr. O'Connell noted a prior work-up included some foot and leg pain and swelling. Upon examination, Dr. O'Connell noted Plaintiff's extremities appeared normal without edema or cyanosis. Plaintiff's medication was adjusted and he was to return for labs in two months.

Treatment notes dated February 23, 2007, report Plaintiff's complaints of bilateral heel pain and neuropathy. (Tr. 233). Dr. Mueller noted Plaintiff's pedal pulses were palpable bilaterally; that Plaintiff had a mild decrease in sensation bilaterally in the plantar feet; that Plaintiff had no signs of infection or open sores in his feet or ankles; and that Plaintiff had no

-6-

tenderness to palpation bilateral calcareous.  Plaintiff was diagnosed with neuropathy, pain in limb and diabetes mellitus.

Treatment notes dated March 2, 2007, report Plaintiff was in for a follow-up for his uncontrolled diabetes. (Tr. 224).  Plaintiff reported he was having a lot of foot and leg pain. Upon examination, Dr. O'Connell noted Plaintiff's extremities appeared normal without edema or cyanosis.   Plaintiff was diagnosed with uncontrolled diabetes and hypertension that was stable. Dr. O'Connell noted Plaintiff needed to take his medication consistently.

On August 15, 2007, Plaintiff underwent a consultative orthopedic evaluation performed by Dr. Alice M. Martinson.  (Tr. 213-214).  Dr. Martinson noted Plaintiff's history of a knee problem.  Dr. Martinson also noted Plaintiff had been a diabetic since 2000 and that he had been treated with oral medications.  Plaintiff reported that he did not monitor his blood sugar and reluctantly admitted that he ran out of his medications a month ago.  Plaintiff complained of numbness and burning in his feet and intermittent swelling in his legs.  Upon examination, Dr. Martinson noted Plaintiff's range of motion in both knees was 0 to 140 degrees; that Plaintiff had no palpable effusion of either knee; and that the ligamentous complexes of both knees was stable. Dr. Martinson noted Plaintiff had mild medial joint line tenderness in both knees but no palpable crepitus with active and passive flexion and extension.  Plaintiff was noted to have chronic venous stasis changes in both lower extremities and was tender to deep pressure in the calves.  Plaintiff did not have pitting edema about the feet but did have stocking dysesthesias of both lower extremities from the toes to the malleolar level.  Dr. Martinson noted x-rays of Plaintiff's knee were normal.   Dr. Martinson opined that Plaintiff, with a blood sugar reading

AO72A
(Rev. 8/82)

of 484, had severe hyperglycemia, bordering on diabetic ketoacidosis.[3]    Plaintiff's knee complaints were noted as nonspecific and there was no evidence of osteoarthritic changes.  Dr. Martinson opined Plaintiff most likely had chronic thrombophlebitis[4] in both legs and diabetic neuropathy in both feet. Dr. Martinson strongly urged that a medical evaluation be obtained. Because he was not in evident distress, Dr. Martinson advised Plaintiff to go immediately to the emergency room once he was back in his home community.

On the same date, Dr. Martinson also completed a Medical Source Statement (Tr. 215-220) opining Plaintiff could lift 51 to 100 pounds occasionally, 21 to 50 pounds frequently and up to ten pounds continuously; could carry 21 to 50 pounds occasionally, 11 to 20 pounds frequently, and up to ten pounds continuously; could sit for a total of eight hours in an eight-hour work day, two hours without interruption; could stand for a total of six hours in an eight-hour work day, two hours without interruption; could walk for a total of six hours in an eight-hour work day; could continuously reach, handle, finger, feel and push/pull; could frequently operate foot controls due to his diabetic neuropathy; could frequently climb stairs, ramps, ladders and scaffolds; and could continuously balance, stoop, kneel, crouch and crawl. Dr. Martinson opined Plaintiff could perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, canes or crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care

---

[3]Ketoacidosis is defined as acidosis accompanied by the accumulation of ketone bodies in the body tissues and fluids, as in diabetic acidosis and starvation acidosis. See Dorland's Illustrated Medication Dictionary at 997, 31st Edition (2007).

[4]Thrombophlebitis is defined as inflammation of a vein associated with thrombus (a stationary blood clot) formation. See Dorland's Illustrated Medication Dictionary at 1948-9, 31st Edition (2007).

AO72A
(Rev. 8/82)

for personal hygiene; and sort, handle, use paper/files.  Dr. Martinson opined that Plaintiff's uncontrolled diabetes was Plaintiff's primary disabling problem.  Dr. Martinson recommended Plaintiff be seen by an Internal Medicine consultant to assess limitations due to Plaintiff's diabetes.

Treatment notes dated November 2, 2007, report Plaintiff was in for a follow-up for his poorly controlled diabetes.  (Tr. 222).  Dr. O'Connell noted that Plaintiff was not following the prescribed diet and was not taking his medications regularly.  Dr. O'Connell stated "As far as I can tell his (sic) is doing nothing for his DM.  He is more concerned about the disability than managing his disease."  Dr. O'Connell noted Plaintiff had positive pigment changes and that Plaintiff reported frequent infections of the feet.  Upon examination, Dr. O'Connell noted Plaintiff's pedal pulses were absent.  Dr. O'Connell noted visual lesions on Plaintiff's legs had worsened.  Dr. O'Connell noted Plaintiff's extremities appeared normal without edema or cyanosis.  Dr. O'Connell opined Plaintiff's lower leg issues were related to the poor control of his diabetes.  Plaintiff was to start taking his medication.  Dr. O'Connell stated "If he misses the next appointment I am not sure what we can continue to do for him."

## III.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

-9-

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only

-10-

if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled during the relevant time period of April 1, 2005, through June 20, 2008.

**A.    Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2007. (Tr. 16). Accordingly, with regard to Plaintiff's DIB application, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of April 1, 2005, his alleged onset date of disability, through December 31, 2007, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for disability benefits he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).  The medical evidence of Plaintiff's condition subsequent to the expiration of Plaintiff's insured status is relevant only to the extent it helps establish Plaintiff's condition before the expiration.  Id. at 1169.

-11-

**B.      Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff's contends that his right knee impairment, diabetes, neuropathy and pain are disabling, the evidence of record does not support this conclusion.

Regarding Plaintiff's knee impairment, the ALJ pointed out that Plaintiff sustained an injury to his right knee and subsequently underwent surgery on February 8, 2002, and was returned to regular duty on April 9, 2002.  Plaintiff complained of knee pain in August of 2002, and November 6, 2003, reporting knee pain while he was working.  The ALJ noted Plaintiff was given a knee brace to use while performing activities and advised to return as needed.  The medical evidence reveals Plaintiff did not report continued knee pain to his surgeon and did not

-12-

seek consistent treatment for his knee pain. The ALJ pointed out that in October of 2006, Plaintiff failed to report any knee pain to his treating physician. However, a review of the record reveals that Plaintiff did report knee pain, to his eye doctor, in September of 2005. The ALJ noted that it appeared Plaintiff also reported knee pain to the consultative doctors to whom he was referred for an examination in connection with his application for disability. The ALJ addressed Plaintiff's right knee x-rays taken in conjunction with Dr. McGowan's consultative examination reporting near bone-on-bone. The ALJ pointed out that x-rays performed by two other physicians, one such physician being an orthopedic surgeon in 2007, noting Plaintiff's right knee x-rays were within normal limits. The ALJ pointed out that Dr. Martinson, during the August of 2007 consultative examination, found Plaintiff's range of motion in both knees was 0 to 140 degrees; that Plaintiff had no palpable effusion of either knee; and that the ligamentous complexes of both knees was stable. Dr. Martinson noted Plaintiff's knee complaints were noted as nonspecific and there was no evidence of osteoarthritic changes. Finally, while Plaintiff alleges pain associated with his knee impairment, the ALJ pointed out that the record reveals Plaintiff takes over-the-counter pain medication for his pain. See Goodale v. Halter, 257 F.3d 771, 774 (8th Cir.2001) (concluding that an ALJ may reasonably discredit a claimant's testimony about disabling pain when the claimant takes nothing stronger than over-the-counter medications to alleviate her symptoms). Based on the evidence of record, we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling knee impairment.

With regard to Plaintiff's diabetes, the ALJ discussed Plaintiff's uncontrolled diabetes mellitus with chronic venous changes and decreased sensation in both lower extremities. The ALJ thoroughly discussed the medical evidence regarding Plaintiff's diabetes, which included

-13-

evidence revealing Plaintiff failed to comply with treatment that could have restored Plaintiff ability to work with this impairment.  The ALJ pointed out that medical evidence reveals Plaintiff was not checking his blood sugars consistently, did not take his medication consistently and failed to show up for some appointments.  The ALJ noted that in November of 2007, Dr. O'Connell, Plaintiff's treating physician, stated "[a]s far as I can tell his (sic) is doing nothing for his DM.  He is more concerned about the disability than managing his disease."  Dr. O'Connell further stated that if Plaintiff missed his next appointment the clinic may not be able to treat Plaintiff any longer.  Based on the record as a whole, we find substantial evidence of record to support the ALJ's determination that Plaintiff failed to follow the prescribed treatment by his treating physician that was expected to restore Plaintiff's ability to engage in substantial gainful activity and that Plaintiff failed to follow this treatment without good cause.  Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir.2004) (If an impairment can be controlled by treatment or medication, it cannot be considered disabling); see 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled....")

Regarding Plaintiff's argument that a third consultative evaluation was necessary to assess possible thrombophlebitis, a review of the record reveals that the ALJ acknowledged that in August of 2007, Dr. Martinson recommended Plaintiff be referred for a medical evaluation for possible thrombophlebitis in his legs and diabetic neuropathy and that Plaintiff's counsel had requested a consultative evaluation by an internal medicine doctor at the administrative hearing. However, the ALJ pointed out that Plaintiff had been seen by two consultative examiners and that subsequent to his evaluation by Dr. Martinson, Plaintiff had been seen by his treating

-14-

physician, in November of 2007, who opined Plaintiff's lower leg issues were related to his poor control of his diabetes and made no mention of Plaintiff possibly having thrombophlebitis. Plaintiff's treating physician's notes clearly indicate Plaintiff was not complying with the prescribed course of treatment and that Plaintiff appeared more concerned with obtaining disability than with controlling his diabetes. After reviewing the record, we find that the record contained substantial evidence to allow the ALJ to make an informed decision regarding Plaintiff's abilities to perform substantial gainful activity. Haley v. Massanari, 258 F.3d 742, 749 (8th Cir. 2001)(reversal due to failure to develop the record only warranted where such failure is unfair or prejudicial). Furthermore, while Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In paperwork associated with his application for disability, Plaintiff reported he was able to watch his children, sometimes with the help of a cousin, when they were out of school as his wife worked; that he could take care of his personal needs; that he could mow the lawn but for less than one hour; that he could drive; and that he was able to attend church weekly. (Tr. 53, 63). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily

-15-

AO72A
(Rev. 8/82)

activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support Plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.     RFC Assessment:

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."

-16-

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth

specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency

medical consultants, Plaintiff's subjective complaints, and his medical records when he

determined Plaintiff maintained the RFC to:

> Lift/carry 51 to 100 pounds occasionally;
> Lift/carry 21 to 50 pounds frequently;
> Lift/carry up to 10 pounds continuously;
> Sit eight hours in an eight-hour workday;
> Sit two hours at one time;
> Stand six hours in an eight-hour workday;
> Stand two hours at one time;
> Walk six hours in an eight-hour workday;
> Continuously reach, handle, finger, feel, push/pull, balance, stoop, kneel, crouch
> and crawl;
> Frequently climb stairs, ramps, ladders and scaffolds and use his feet to operate
> foot controls;
> Tolerate continuous exposure to unprotected heights, moving mechanical parts,
> operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary
> irritants, extreme cold/heat and vibrations; Tolerate exposure to loud noise.

In determining Plaintiff's RFC, the ALJ thoroughly discussed the medical evidence along with

all the documents associated with Plaintiff's application.  The ALJ specifically addressed the non-

examining medical consultants RFC assessments completed in 2006, opining that due to

Plaintiff's osteoarthritis in the knee Plaintiff could do sedentary work, and found that the more

recent assessment completed by Dr. Martinson, an orthopedic specialist in August of 2007 was

supported by the record as a whole.  It is noteworthy that Dr. Martinson clearly took Plaintiff's

neuropathy into account when she completed the medical source statement relied upon by the ALJ

when determining Plaintiff's RFC.  Based on Plaintiff's failure to seek ongoing treatment for his

alleged knee pain, use of over-the-counter medication to treat his pain, failure to follow his

-17-

treating physician's prescribed course of treatment without good cause, and daily activities, we find substantial evidence to support the ALJ's RFC determination.

### D.      Past Relevant Work:

Plaintiff has the initial burden of proving that he suffers from a medically determinable impairment which precludes the performance of past work. <u>Kirby v. Sullivan</u>, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. <u>Pickner v. Sullivan</u>, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); <u>Martin v. Sullivan</u>, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Therefore, even though a claimant cannot perform the actual demands of his particular past job, if he can carry out his job as it is generally performed in the national economy, he is not disabled under the regulations. <u>Evans v. Shalala,</u> 21 F.3d 832, 834 (8th Cir. 1994). We note in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, testified that the hypothetical individual would be able to perform

-18-

Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Furthermore, while Plaintiff testified at the administrative hearing that he sometimes had problems with communicating in English at work, he also testified that he had worked at his past job for two years and left due to an injury not because of communication problems. Accordingly, the ALJ properly concluded Plaintiff could perform his past relevant work as an assembly production worker.

**V.       Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 5th day of January 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)